FILED
CLERK, U.S. DISTRICT COURT
9/17/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ___E.C.___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

March 2025 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>            v.<br><br>LINH LE and<br>TRONG LUU,<br><br>            Defendants. | No. 8:25-cr-00185-FWS<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1343: Wire Fraud;<br>18 U.S.C. § 1957: Money<br>Laundering; 18 U.S.C.<br>§§ 981(a)(1)(C) and 982 and<br>28 U.S.C. § 2461(c): Criminal<br>Forfeiture] |

The Grand Jury charges:

COUNTS ONE THROUGH SIXTEEN

[18 U.S.C. § 1343]

[ALL DEFENDANTS]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1.  Defendants LINH LE and TRONG LUU founded and operated Inventis Ventures Holding Inc., Inventis Ventures Inc., and Inventis Ventures LLC (collectively "Inventis"), located in

Tustin, California.  Inventis was marketed as a purported invite-only "Corporate Capitalization Loan Program," promising a safe investment with a high rate of return.

2. Defendant LE was the Chief Executive Officer of Inventis.  Defendant LE was in charge of investor solicitations, sales pitches and presentations, hiring and training employees, and signing loan contracts.  Defendant LE was also a signatory Inventis's main bank accounts.

3. Defendant LUU acted as the Chief Financial Officer of Inventis.  In that role, defendant LUU was a signatory on Inventis's main bank accounts, issued the "interest checks" to investors, and assisted defendant LE in running the daily operations.

B.  <u>THE SCHEME TO DEFRAUD</u>

4. Beginning in or around March 2022 and continuing until at least in or around early 2024, in Orange County, within the Central District of California, and elsewhere, defendants LE and LUU, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud investors of Inventis as to material matters, and to obtain money and property from investors of Inventis by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

5. The fraudulent scheme operated, in substance, as follows:

    a. Defendants LE and LUU, through Inventis, solicited investors by word of mouth or referrals from existing investors to enter into 12-month loan contracts with a high rate

of interest, payable monthly.  Defendant LE encouraged investors to make loans in cash.

   b. Generally, in the loan agreements, defendants LE and LUU, in exchange for at least a $5,000 loan, promised to pay 15% interest per month with repayment of the full principal at the end of 12-month contract.  Alternatively, investors could choose an "annual contract," forgo monthly interest payments, and instead receive a "360%" return on the loan and repayment of principal at the end of 12 months.  When the loan term expired, investors had the option to enter into a new loan agreement.

   c. Defendants LE and LUU promised to use the loan proceeds on Inventis's behalf for "the explicit purpose" of "investing in different emerging projects in its investment portfolio," including investments in real estate and sovereign or special banks.

   d. Instead of using the funds as promised, defendants LE and LUU used loan proceeds to make interest payments to previous investors, to pay business expenses, including referral payments and commissions, and for their own personal purposes, including to fund other unrelated business ventures, make payments for two Yorba Linda mansions and a waterfront condominium in Huntington Beach, and pay compensation to themselves.

   e. Defendant LE and LUU paid interest payments using other investors' funds to lull earlier investors to induce them to renew the loan agreements, invest more money, and encourage others to invest.

6. Based on the fraudulent scheme above, defendants LE and LUU raised over approximately $27.5 from approximately 1,400 Inventis investors and personally gained approximately $7.4 million.

B. THE USE OF INTERSTATE WIRES

7. On or about the dates set forth below, within the Central District of California, and elsewhere, for the purpose of executing the above-described scheme to defraud, defendants LE and LUU caused the transmission of the following items by means of wire communication in interstate commerce:

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| ONE | 3/9/23 | $50,000 from victim T.K.'s Fremont Bank Account to an Inventis Ventures LLC Bank of America account in Tustin, California, by way of check, which was processed through a server in Richardson, Texas for a loan |
| TWO | 4/13/23 | $3,000 from an Inventis Ventures LLC Bank of America account in Tustin, California, by way of check, which was processed through a server in Richardson, Texas to victim M.H.T.'s Navy Federal Credit Union account for a purported interest payment |
| THREE | 4/28/23 | $15,000 from victim Y.G.'s Wells Fargo Bank account to an Inventis Ventures LLC Bank of America account in Tustin, California, by way of check, which was processed through a server in Richardson, Texas for a loan |
| FOUR | 4/28/23 | $5,000 from victim Y.G.'s Wells Fargo Bank account to an Inventis Ventures LLC Bank of America account in Tustin, California, by way of check, which was processed through a server in Richardson, Texas for a loan |

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| FIVE | 6/28/23 | $7,500 from an Inventis Ventures LLC Bank of America account in Tustin, California, by way of check, which was processed through a server in Richardson, Texas to victim A.M.'s account for a purported interest payment |
| SIX | 7/18/23 | $300,000 from victim M.S.'s Northpointe Bank account to an Inventis Ventures Holding Inc. BMO Harris bank account in Westminster, California, which was processed through the Federal Reserve facilities in New Jersey and Texas for a loan |
| SEVEN | 7/26/23 | $40,000 from victim D.R.'s Mechanics Bank account to an Inventis Ventures LLC Bank of America account in Tustin, California, which was processed through the Federal Reserve facilities in New Jersey and Texas for a loan |
| EIGHT | 7/27/23 | $20,099 from victim D.R.'s Sun Community Federal Credit Union account to an Inventis Ventures LLC Bank of America account in Tustin, California, which was processed through the Federal Reserve facilities in New Jersey and Texas for a loan |
| NINE | 7/28/23 | $7,500 from an Inventis Ventures LLC Bank of America account in Tustin, California, by way of check, which was processed through a server in Richardson, Texas to victim A.M.'s account for a purported interest payment |
| TEN | 8/18/23 | $3,000 from an Inventis Ventures LLC Bank of America account in Tustin, California, by way of check, which was processed through a server in Richardson, Texas to victim M.H.T.'s Navy Federal Credit Union account for a purported interest payment |
| ELEVEN | 8/22/23 | $208,493 from victim A.M.'s Bank of America account to an Inventis Ventures LLC Bank of America account in Tustin, California, by way of check, which was processed through a server in Richardson, Texas for a loan |

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| TWELVE | 8/25/23 | $40,000 from victim A.M.'s Bank of America account to an Inventis Ventures LLC Bank of America account in Tustin, California, by way of check, which was processed through a server in Richardson, Texas for a loan |
| THIRTEEN | 9/5/23 | $300,000 from victim M.S.'s Northpointe bank account to an Inventis Ventures Holding Inc. BMO Harris bank account in Westminster, California, which was processed through the Federal Reserve facilities in New Jersey and Texas for a loan |
| FOURTEEN | 11/13/23 | $110,000 from victim M.T.'s Bank of America account to an Inventis Ventures Holding Inc. Cathay bank account, by way of check, which was processed through a server in Milwaukee, Wisconsin for a loan |
| FIFTEEN | 11/14/23 | $100,000 from victim M.H.T through a Navy Federal Credit Union cashier's check to an Inventis Ventures Holding Inc. Cathay bank account in Westminster, California, which was processed through a server in Milwaukee, Wisconsin for a loan |
| SIXTEEN | 11/14/23 | $100,000 from victim M.H.T through a Navy Federal Credit Union cashier's check to an Inventis Ventures Holding Inc. Cathay bank account in Westminster, California, which was processed through a server in Milwaukee, Wisconsin for a loan |

COUNT SEVENTEEN

[18 U.S.C. § 1957]

[ALL DEFENDANTS]

8.  On or about September 16, 2022, in Orange County, within the Central District of California, and elsewhere, defendants LINH LE and TRONG LUU knowingly engaged in a monetary transaction of a value greater than $10,000, involving funds that they knew to be criminally derived property, and which property, in fact, was derived from specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, specifically, a $544,130.59 wire transfer from an Inventis Ventures LLC Bank of America bank account to Escrow Network Group, Inc. for the down payment to purchase a waterfront property located in Huntington Beach, California.

COUNT EIGHTEEN

[18 U.S.C. § 1957]

[ALL DEFENDANTS]

9.   On or about February 28, 2023, in Orange County, within the Central District of California, and elsewhere, defendants LINH LE and TRONG LUU knowingly engaged in a monetary transaction of a value greater than $10,000, involving funds that they knew to be criminally derived property, and which property, in fact, was derived from specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, specifically, a $674,335 wire transfer from defendant LUU's Bank of America bank account to California Escrow Group, Inc. for a down payment to purchase a mansion in Yorba Linda, California.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts One through Sixteen of this Indictment.

2. Any defendant so convicted shall forfeit to the United States of America the following:

   (a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to any such offense; and

   (b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished

in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of any defendant's conviction of the offenses set forth in either of Counts Seventeen or Eighteen this Information.

2. Any defendant so convicted, shall forfeit to the United States of America the following:

(a) Any property, real or personal, involved in such offense, and any property traceable to such property; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), any defendant so convicted shall forfeit substitute property, if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an

intermediary who handled but did not retain the property in the course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000 or more in any twelve-month period.

A TRUE BILL

      /s/
Foreperson

BILAL A. ESSAYLI
Acting United States Attorney

JOESPH T. MCNALLY
Assistant United States Attorney
Acting Chief, Criminal Division

JENNIFER L. WAIER
Assistant United States Attorney
Chief Assistant United States Attorney